**LAWRENCE PAPER COMPANY; American Corrugated Machine Corporation, Plaintiffs–Appellants,**

v.

**ROSEN & COMPANY, INC.; Ameritrust Company, N.A.; Alpine Corrugated Machine, Defendants–Appellees.**

No. 90–3790.

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1991.

Decided July 22, 1991.

Kelly Dowling Stimpson, Frank J. Cumberland, Kaufman, Cumberland & Zamore, Cleveland, Ohio, Allan R. Purvis, Todd W. Ruskamp, and Barkley Clark (argued), Shook, Hardy & Bacon, Kansas City, Mo., for plaintiffs-appellants.

M. David Smith, Law Offices of David O. Smith, Lisa M. Gerlack (argued), Friedman, Domiano & Smith, Cleveland, Ohio, Richard E. Kleinman (argued), Chagrin Falls, Ohio, and David O. Simon (argued), Law Offices of David O. Smith, Cleveland, Ohio, for defendants-appellees.

Before KEITH and BOGGS, Circuit Judges, and BERTELSMAN, District Judge.*

BERTELSMAN, District Judge:

This is an appeal from the granting of summary judgment for the defendants by the district court. The dispute arises out of an auction of certain manufacturing equipment used in making corrugated card-

---

board boxes. The facts are virtually undisputed and were succinctly stated as follows by the trial court in its memorandum opinion granting the summary judgment.

"The following material facts are not in dispute.

"Defendant Ameritrust obtained judgement against North Coast Corrugator Company Inc., et al., in the amount of $552,719.98. To dispose of the collateral securing that debt, defendant Ameritrust hired defendant Rosen & Company as its agent to advertise and hold a public auction of the collateral, primarily consisting of line cardboard corrugating equipment. Rosen & Company advertised the sale extensively in newspapers, trade journals, and a catalog which was prepared especially for the sale. On the cover page of the mail catalog, the terms of this particular auction were printed and included:

'. . . 25% deposit at time bid is struck down; balance in full at the completion of the auction sale. All sales are AS–IS, WHERE–IS [sic] without any guaranties, or warranties. The buyers are responsible for the removal of their purchases at their own risk and expense. Sale subject to confirmation of the Secured Party [sic].'

"On an interior page, the following was printed:

'THIS SALE SUBJECT TO COURT CONFIRMATION & CONFIRMATION SHALL COME & BE HEARD ON OR BEFORE 45 DAYS FROM DATE OF THIS COMMERCIALLY AND REASONABLY ADVERTISED PUBLIC AUCTION SALE. YOU WILL BE NOTIFIED BY EITHER TELEPHONE OR BY LETTER, SENT ORDINARY MAIL, AS TO THE DATE & TIME YOU MAY PICK UP ITEMS YOU HAVE PURCHASED AT THIS AUCTION. [SIC]'

"On yet another page, more general terms of sale were printed and included the following:

---

\* The Honorable William O. Bertelsman, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

'ADDITIONAL TERMS AND CONDITIONS: other terms and conditions may be added to this sale. Such additional terms and conditions may be announced orally prior to the auction sale, and all such additional terms and conditions should be binding as though fully set forth in length. [sic]'

"Terms and conditions that were announced [orally at the auction] and are relevant to the instant case include the following:

'Be advised any and all sales are subject to confirmation by the Secured Party, and that confirmation may go into a Court confirmation and if it does the secured party and the Court of Common Pleas, Cuyahoga County, reserves up to 45 days from the date of confirmation.'[1]

"The auction took place on February 28, 1989, with over 50 bidders attending including defendant Alpine and plaintiffs LPC and ACM. The auctioneer announced that the line of cardboard equipment would first be offered for sale in bulk and then for sale piece by piece (piecemeal). The only bid for the corrugated line (the line) in bulk was by Alpine Corrugated Machine for $50,000. The auctioneer then held a piecemeal sale of the line in which the total bids equaled $139,000. During the piecemeal bidding, bids for certain equipment were 'struck down' to LPC for $34,750 and 'struck down' to ACM for $17,500. Both plaintiffs tendered checks for 25% of the total strike down price, as per the above-stated terms. Stating in substance that the piecemeal bidding was clearly higher then that in bulk, Rosen & Company declared the auction closed.

"Subsequent to the auction, Alpine offered $175,000 in bulk for the line. Ameritrust, as the secured party, accepted Alpine's offer to buy the equipment. Ameritrust then requested and was granted a hearing in the Cuyahoga County Court of Common Pleas to determine the commercial reasonableness of a public sale. That court determined that the sale was commercially reasonable as defined in the Uniform Commercial Code. Rosen & Company then notified Alpine, LPC and ACM, confirming that the sale had been made to Alpine. The plaintiffs then filed the instant lawsuit with this Court."

Trial Court's Opinion, pp. 4–6 (footnote omitted).

Judge Krenzler based his dismissal of the complaint on his finding that the auction sale was "clearly with reserve" and that the sale was, as a matter of law, "subject to both the confirmation of the secured party and the Court of Common Pleas." In his view, there was no acceptance of the bid, because the sale was not confirmed by the secured party. Therefore, he held there was no binding contract and the sellers were free to accept the subsequent offer. We agree and affirm.

It is important to grasp the legal understandings implicit in a sale by auction. These are well established:

"A sale at auction, like every other sale, must have the assent, express or implied, of both seller and buyer. An announcement of an auction or the act of putting property up for sale at auction does not constitute an offer to sell capable of acceptance by the making of a bid. An advertisement of an auction is not an offer to sell which becomes binding, even conditionally, on the owner when a bid is made. Rather, an announcement that a person will sell his property at public auction to the highest bidder is a mere declaration of intention to hold an auction at which bids will be received. It is a mere invitation to those attending the sale to make offers by bids. The contract becomes complete only when the

---

1. The spiel of the auctioneer was tape recorded. In addition to the portion of the announcement quoted by the trial judge above, the auctioneer also stated: "Now we turn to the black and white pages, the first black and white written page that does tell you that the sale is subject to

Court confirmation and it says confirmations shall come on and be heard on or before 45 days from this commercially and reasonably advertised public auction sale. This could happen tomorrow or it might take 30 days or it might take 20 days." Record at 88.

bid is accepted, this being ordinarily denoted by the fall of a hammer.

"These common-law principles are adopted by the Uniform Commercial Code.

"Where the seller reserves the right to refuse to accept any bid made, a binding sale is not consummated between the seller and the bidder until the seller accepts the bid. Furthermore, where a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid, and this applies to the auction of public as well as private property.

"Once a bid has been accepted, the parties occupy the same relation toward each other as exists between promisor and promisee in an executory contract of sale conventionally made. Thereafter, as a rule, the seller has no right to accept a higher bid, nor may the buyer withdraw his bid."

7 Am.Jur.2d *Auctions & Auctioneers* § 16 (1980 & Supp.1991); *see also* 6 Ohio Jur.3d *Auctions & Auctioneers* §§ 23–25 (1978 & Supp.1990) [hereinafter Ohio Jur.].

 Therefore, applying these principles, where a sale is with reserve[2] and subject to "confirmation" by the seller, the bids are subject to rejection after the sale, even though accepted by the auctioneer. *Iwakiri v. Ewing (In re El Camino Press)*, 31 B.R. 340 (Bankr.C.D.Cal.1983), is directly in point with the case at bar. It cites many authorities which need not be repeated here, and we approve its reasoning. It squarely holds that an auction sale may be made conditional, provided the bidders have actual or constructive notice of the conditions. *Accord Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir.1972); *Cody v. Stalter*, 1988 WL 96188, 1988 Ohio App. LEXIS 3698 (Ohio Ct.App. Erie County 1988) [hereinafter *Cody]; Tanner v. Raw-*

son *Masonic Temple*, No. 5–80–22 (Ohio Ct.App. Hancock County Dec. 31, 1980); *see also* Annotation, *Auction Sales Under UCC § 2–328*, 44 A.L.R.4th 110 (1986 & Supp.1990).

Appellants argue that the terms of the various leaflets and advertisements were sufficiently ambiguous that a question of fact existed, entitling them to have submitted to the jury their claim that once their bids were "knocked down" by the auctioneer, the sellers were bound subject to confirmation *only* by the court.

 We agree with Judge Krenzler that the language in the various advertisements and announcements was not conflicting and means as a matter of law that the sale was subject to confirmation by *both* the secured party and the court.

Further, the weight of authority is that, even if some inconsistency existed between the advertised terms and the announcement made orally at the auction, the latter prevails.

"Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting, or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up."

Restatement (Second) of Contracts § 28(2); *see also Cody, supra;* Ohio Jur., *supra,* § 23.

As stated above, the auctioneer here stated unequivocally at the beginning of the bidding that the sales were subject to confirmation by the secured party and later by the court. These statements overrode and cured any latent ambiguities in the prior ads and leaflets.

Appellants make much of the auctioneer's statement that the goods would be offered first in bulk and then piecemeal "and whichever way generates the most

---

**2.** Unless explicitly provided that the auction is "without reserve," the auction is "with reserve." Ohio Rev.Code Ann. § 1302.41(C). "In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an

article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time." *Id.* Appellants do not dispute that the auction at issue was "with reserve." Rather, appellants take issue with the notice given that the secured party reserved the right of confirmation.

money is the way that we will recommend confirmation to the secured party—as soon as possible we'll recommend confirmation to the court." We do not believe this argument helps the appellants, since it only makes clearer that the secured party reserved the right to reject the bids and the auctioneer could only recommend their acceptance.

In the "new era" of summary judgments, a moving party is entitled to summary judgment if, after the respondent has sufficient time for discovery, it is unable to adduce evidence which would withstand a motion for directed verdict. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). We agree with Judge Krenzler that that is the situation here.

AFFIRMED.