# United States Court of Appeals for the Federal Circuit

2008-5055

BILTMORE FOREST BROADCASTING FM, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Donald J. Evans, Fletcher, Heald & Hildreth, PLC, of Arlington, Virginia, argued for plaintiff-appellant.  Of counsel was Raymond J. Quianzon.

Anuj Vohra, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for argued defendant-appellee.  With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel was Marla T. Conneely, Trial Attorney.  Of counsel on the brief was C. Grey Pash, Jr., Attorney, Office of the General Counsel, Federal Communications Commission, of Washington, DC.

Appealed from:  United States Court of Federal Claims

Senior Judge James F. Merow

# United States Court of Appeals for the Federal Circuit

2008-5055

BILTMORE FOREST BROADCASTING FM, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 07-CV-316, Senior Judge James F. Merow.

_____

DECIDED: February 10, 2009

_____

Before BRYSON, PLAGER, and DYK, Circuit Judges.

DYK, Circuit Judge.

Biltmore Forest Broadcasting FM, Inc. ("Biltmore") brought suit under the Tucker Act, alleging that the Federal Communications Commission ("FCC" or "Commission") breached an implied-in-fact contract that arose as the result of an auction for an FM broadcast license. The FCC allegedly breached the contract by violating the rules relating to the auction. The Court of Federal Claims granted the United States's motion to dismiss for lack of subject-matter jurisdiction. Biltmore Forest Broad. FM, Inc. v. United States, 80 Fed. Cl. 322 (2008) ("Biltmore II"). We affirm, and hold that the District of Columbia Circuit has exclusive jurisdiction to determine the alleged rules violation.

BACKGROUND

The following description is based on the complaint filed by Biltmore and the undisputed facts. For simplicity we confine this description to issues pertinent to this appeal.

Biltmore participated in an FCC auction for a broadcast license in Biltmore Forest, North Carolina. As part of the implementation of its mission to achieve diversification of ownership, FCC rules limit the "cognizable interest in licenses" that one person or single entity is allowed to control. See 47 C.F.R. § 73.3555. The FCC requires submission of a family media certification to determine the extent to which media interests owned by immediate family members are "subject to common influence or control." See Clarification of Commission Policies Regarding Spousal Attribution, 7 F.C.C.R. 1920, 1922-23 (1992). "Under existing policy, applicants for new construction permits and for transfers or assignments of licenses are required to report the broadcast interests of all immediate family members (parents, siblings and offspring, as well as spouses) of any party to the application." Id. at 1922. "In addition, applicants must file exhibits to these applications, which provide full disclosure regarding the nature and extent of such familial interests." Id.

The FCC's rules themselves do not specify at which stage in the proceedings the required certification must be submitted. However, the Public Notice for this license auction addressed the question. Biltmore II, 80 Fed. Cl. at 323 (citing Notice and Filing Requirements for Auction of AM, FM, TV, LPTV, and FM and TV Translator Construction Permits Scheduled for September 28, 1999, 14 F.C.C.R. 10,632, 10,641 (1999) (hereinafter "Public Notice")). The official Public Notice announcing the auction

required, as part of the application, submission of a certification of media interests held by family members, stating that "all applicants must provide the information set forth in this section." 14 F.C.C.R. at 10,641 (emphasis omitted). The Public Notice also stated that "[b]idders must certify . . . compliance with the Commission's policies relating to media interests of immediate family members." Id. One of the instructions warned that "[f]ailure to submit required information by the resubmission date will result in dismissal of the application and inability to participate in the auction." Id. at 10,697 (emphasis omitted).

Ultimately, Liberty Productions, L.P. ("Liberty") was the highest bidder and Biltmore was the second highest bidder. Biltmore II, 80 Fed. Cl. at 324. Unlike Biltmore, Liberty did not file a family media certification prior to the auction. Id. at 323. However, Liberty filed its family media certification within a month of the auction's conclusion. Id. at 324.

Prior to the conclusion of an auction, bidder-applicants are precluded from contesting the ability of other bidder-applicants to participate in that auction. Id. at 323-24. "[T]he Commission concluded that the fairer and more expeditious approach would be to resolve any outstanding [qualification] issues after the auction." Implementation of Section 309(j) of the Communications Act, 14 F.C.C.R. 8724, 8731 (1999); see also id. at 8732 ("We deny reconsideration of our determination to defer until after the auction basic qualifications issues . . . .").

After the auction's conclusion, in administrative proceedings before the FCC, Biltmore argued that Liberty should have been disqualified for failure to submit a timely family media certification and that the license should have been awarded to Biltmore as

the next highest bidder.  <u>Biltmore Forest Broad. FM, Inc. v. FCC</u>, 321 F.3d 155, 159 (D.C. Cir. 2003) ("<u>Biltmore I</u>").  Biltmore noted that § 73.5002(b) of the FCC's regulations provides that "[t]o participate in . . . [an] auction[ ], all applicants <u>must</u> timely submit short-form applications [ ], along with all required certifications, information and exhibits, pursuant to the provisions of Section 1.2105(a) <u>and any Commission public notices</u>."  Pl.-Appellant's Final Br., <u>Biltmore I</u>, No. 01-1392, at 5 (D.C. Cir. July 18, 2002) (emphases in brief).  The <u>Public Notice</u> stated that all applicants "must" provide the family media certification and that "[f]ailure to submit required information by the resubmission date will result in dismissal of the application and inability to participate in the auction."  14 F.C.C.R. at 10,697 (emphasis omitted).

Biltmore argued, moreover, that § 1.2105(b)(1) of the FCC's rules also required disqualification.  That provision stated "Any short-form application . . . that does not contain all of the certifications required pursuant to this section is unacceptable for filing and cannot be corrected subsequent to the applicable filing deadline. The application will be dismissed with prejudice and the upfront payment, if paid, will be returned."  47 C.F.R. § 1.2105(b)(1).[1]  Biltmore's theory was, thus, that the <u>Public Notice</u> together with

---

[1]    Section 1.2105(b) states, inter alia:
(1) Any short-form application (FCC Form 175) that does not contain all of the certifications required pursuant to this section is unacceptable for filing and cannot be corrected subsequent to the applicable filing deadline. The application will be dismissed with prejudice and the upfront payment, if paid, will be returned.
(2) The Commission will provide bidders a limited opportunity to cure defects specified herein (except for failure to sign the application and to make certifications) and to resubmit a corrected application. During the resubmission period for curing defects, a short-form application may be amended or modified to cure defects identified by the Commission or to make minor amendments or modifications. After the resubmission period has ended, a short-form application may be amended or modified to make

the FCC's rules required that Liberty submit a family ownership certification together with its original application and that the FCC could not allow this defect to be cured after the completion of the bidding process. In re Liberty Prods., L.P., 16 F.C.C.R. 12,061, 12,068 (adopted April 12, 2001, released May 25, 2001). Biltmore did not raise a contract claim to the FCC.

In a Memorandum Opinion and Order adopted on April 12, 2001, the FCC held that Liberty was not disqualified due to the late submission of the family ownership certification, granted Liberty's application for a construction permit, and dismissed Biltmore's mutually exclusive application. Id. at 12,068-71, 12,095. The FCC first addressed whether § 1.2105(b) of its rules required disqualification. Id. at 12,068. The FCC found that "the [FCC] rules do not expressly provide that a short-form application omitting this particular certification is unacceptable for filing and will be dismissed with prejudice (i.e., with no opportunity to supply the missing certification after the short-form filing deadline.)." Id. The FCC concluded that "Section 1.2105(b) [of the rules] requires the dismissal with prejudice, without the opportunity to correct after the applicable filing deadline, only of" a narrow category of information. Id. The family ownership certification does not fall into that narrow category. Id. at 12,068-69. The FCC also

---

minor changes or correct minor errors in the application. Major amendments cannot be made to a short-form application after the initial filing deadline. Major amendments include changes in ownership of the applicant that would constitute an assignment or transfer of control, changes in an applicant's size which would affect eligibility for designated entity provisions, and changes in the license service areas identified on the short-form application on which the applicant intends to bid. Minor amendments include, but are not limited to, the correction of typographical errors and other minor defects not identified as major. An application will be considered to be newly filed if it is amended by a major amendment and may not be resubmitted after applicable filing deadlines.

concluded that 47 C.F.R. § 73.5002(b) does not require disqualification. Even though § 73.5002(b) provides that applicants must comply with "any Commission public notices" in order to participate in an auction, it does not provide notice that the omission of a family media certification "will result in the dismissal of the short-form application with no opportunity to amend." Id. at 12,069. In addition, the Public Notice "does not expressly state that the omission of this particular certification . . . will render the short-form application defective . . . , such that it cannot later be amended." Id. at 12,069. Rather, it is merely a "general admonishment" which "echoes the general requirements applicable to all short-form information." Id. at 12,069. "Fairness demands explicit notice for a severe sanction, such as the dismissal of an application." Id. at 12,070. This Public Notice "does not provide sufficient notice that a short-form application not containing the familial certification must be dismissed." Id.

Biltmore appealed the FCC's licensing decision to the District of Columbia Circuit, pursuant to 47 U.S.C. § 402(b)(1), (5), & (6). Biltmore II, 80 Fed. Cl. at 324. Biltmore argued that Liberty should have been disqualified. Biltmore urged that the FCC's interpretation conflicted with the plain language of its rules, and that, even if the rules were ambiguous, the FCC's interpretation should not be given deference because the FCC stood to gain monetarily by the interpretation.

The District of Columbia Circuit affirmed the FCC's award of the license to Liberty. Biltmore I, 321 F.3d at 160, 165. The court held that the FCC was correct that a family certification is not one of the specifically required documents under 47 C.F.R. § 1.2105(b)(1), which would require immediate disqualification without an opportunity to amend. Id. at 160-61. Deferring to the agency's interpretation, which was controlling

"unless . . . plainly erroneous or inconsistent with the regulation," the court held that the FCC did not act unreasonably in determining that neither its rules nor the Public Notice required the dismissal of Liberty's application for failure to timely file a family media certification. Id. The court stated that the FCC "need not . . . disqualify Liberty after the auction on the basis of an omission that, according to the [Public Notice], would disqualify an applicant if discovered prior to the auction." Id. at 161. "Because the family certification was not required by § 1.2105, the omission could be cured." Id.

Biltmore's subsequent petition for certiorari to review the District of Columbia Circuit's decision was denied. Biltmore Forest Broad. FM, Inc. v. FCC, 540 U.S. 981 (2003).

Biltmore then filed the present damages action in the Court of Federal Claims, urging that the FCC breached an implied-in-fact contract when it granted a broadcast license in violation of the published terms for the auction.[2] Biltmore II, 80 Fed. Cl. at 322-23. Biltmore's complaint presented to the Court of Federal Claims was identical to Biltmore's first-listed issue presented for review by the District of Columbia Circuit:

> 1. The FCC issued a Public Notice establishing mandatory preauction requirements for participation in an action for broadcast licenses. The winner of the auction did not comply with one of these prerequisites. Other bidders had recognized that the bidder's application was defective and placed their bids accordingly. Could the FCC excuse the winning bidder's non-compliance after the auction and declare it the winner?

Id. at 324-25. The Court of Federal Claims granted the United States's motion to dismiss for lack of subject-matter jurisdiction largely based on our decision in Folden v.

---

[2] Biltmore alternatively characterized the issue as a taking in violation of the Fifth Amendment, but admitted at oral argument that the complaint does not allege a takings claim.

United States, 379 F.3d 1344 (Fed. Cir. 2004), discussed below. In the alternative, the court also held that either Biltmore's claims were barred by claim preclusion or Biltmore's claims for monetary relief were limited to bid preparation and proposal costs. Biltmore II, 80 Fed. Cl. at 336.

Biltmore timely appealed. On April 30, 2008, Biltmore filed a petition with this court requesting an initial hearing en banc and reconsideration of Folden. That petition was denied on June 17, 2008, and Biltmore's appeal was heard by a panel of this court.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review whether the Court of Federal Claims possesses subject-matter jurisdiction de novo. See Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in relevant part).

The Tucker Act of 1887 grants the Court of Federal Claims jurisdiction over, inter alia, "[a]ny claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The elements of an implied-in-fact contract are: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance[;] and (4) 'actual authority' on the part of the government's representative to bind the government." Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc). In the past both the Supreme Court and we have held that contract and takings claims, in such circumstances, can be founded on regulatory actions by Congress or federal agencies. See, e.g., United States v. Winstar Corp., 518 U.S. 839 (1996); Preseault v. Interstate Commerce Comm'n, 494 U.S.

1 (1989). The question here is whether the Court of Federal Claims has jurisdiction to determine the existence of an alleged regulatory violation by the FCC.

Biltmore's contractual theory is clear enough. Biltmore argues that Liberty should have been disqualified and that, as a result, a contract exists between the FCC and Biltmore, as the next highest bidder. Biltmore is correct that an auction can result in a contract. "General principles of auction law provide a baseline rule that the close of an auction—the fall of the hammer—signals acceptance of the offer and creates a binding contract between the seller and the high bidder." In re GWI PCS 1 Inc., 230 F.3d 788, 807 (5th Cir. 2000).[3]

Biltmore contends that the FCC has a contractual obligation to grant a license to the highest bidder at the close of an auction if that bidder fulfills the statutory eligibility requirements. See In re Nextwave Pers. Commc'ns, Inc., 200 F.3d 43, 57, 60-61 (2d Cir. 1999). Indeed, the FCC itself appears to recognize that its auctions result in a contract. In re BDPCS, Inc., 15 F.C.C.R. 17,590, 17,599-600 (2000) ("The announcement of the winning bidder in an auction conducted by the Commission, like

---

[3]    See also Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 520 (1925) ("The terms and conditions of the [government's auction] as set forth in the advertisement [are] binding alike upon the United States and the bidders."); Blossom v. R.R. Co., 70 U.S. (3 Wall.) 196, 206 (1865) ("[A]s soon as the hammer is struck down . . . the bargain is considered as concluded, and the seller has no right afterwards to accept a higher bid nor the buyer to withdraw from the contract."); Lawrence Paper Co. v. Rosen & Co., 939 F.2d 376, 378-79 (6th Cir. 1991) ("The contract becomes complete only when the bid is accepted, this being ordinarily denoted by the fall of a hammer.") (quoting 7 Am. Jur. 2d Auctions & Auctioneers § 16 (1980 & Supp. 1991)); Bottorff v. Ault, 374 F.2d 832, 835 (7th Cir. 1967) ("The sales here were at auction. They were completed when the hammer fell or when the auctioneer said 'sold.'"); Barclay v. United States, 333 F.2d 847, 857 (Ct. Cl. 1964) ("After the date their bid was accepted by the Department . . . , both parties were contractually bound to do business with one another on the terms set out in the contract.").

the acceptance of high bids in auctions in other settings, terminates the bidding and establishes, as of the moment of the acceptance of the high bid, the binding obligation to pay the winning bid price for the licenses." (footnote omitted)). Curiously, on appeal the government argues that "FCC licensing auctions are not commercial transactions resulting in a contractual relationship between the FCC and the license awardee." Def.-Appellee's Br. & Rule 30(f) App. at 7. Nonetheless, we assume for the purposes of this appeal, without deciding, that an FCC license auction results in a contract between the FCC and the high bidder.[4]

Even under this assumption, this case hinges on whether the District of Columbia Circuit has exclusive jurisdiction to determine whether the FCC complied with its own rules in connection with the award of a construction license to Liberty and the denial of a license to Biltmore under 47 U.S.C. § 402(b). Section 402(b) provides:

> Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:
> (1) By any applicant for a construction permit or station license, whose application is denied by the Commission.
> . . . .
> (5) By the holder of any construction permit or station license which has been modified or revoked by the Commission.
> (6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1), (2), (3), (4), and (9) of this subsection.

In interpreting an earlier version of § 402, the Supreme Court stated that an FCC order denying an application for a license "was reviewable only by a direct

---

[4] In one of its alternative holdings, the Court of Federal Claims analyzed the facts under 28 U.S.C. § 1491 as an unsuccessful bidder scenario, and found that damages were limited to bid preparation costs. Biltmore II, 80 Fed. Cl. at 334, 336. We need not decide if this was correct given our disposition of the case.

appeal . . . under 47 U.S.C. § 402(b)." United States v. Storer Broad. Co., 351 U.S. 192, 208 (1956); see Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 8 (1942) ("[O]rders granting or denying applications for construction permits or station licenses . . . were made reviewable by the Court of Appeals for the District of Columbia"). Recently, in Folden, we agreed and held that it has been long-settled that § 402(b) provides that the District of Columbia Circuit is the exclusive location for judicial review of the FCC's licensing decisions. Folden, 379 F.3d at 1356-57 (collecting cases). Therefore, the Court of Federal Claims lacks subject-matter jurisdiction to review the FCC's denial of a construction permit.[5]

Biltmore, however, asserts that it does not seek to overturn the FCC's licensing decision and does not now seek to secure the license. Biltmore points out that the statute does not give the District of Columbia Circuit jurisdiction over implied-in-fact contracts. Rather, exclusive jurisdiction to adjudicate disputes as to implied-in-fact contracts rests with the Court of Federal Claims. What Biltmore ignores is that the District of Columbia Circuit not only has exclusive jurisdiction to review the grant or denial of FCC licenses, but also has exclusive jurisdiction to adjudicate the underlying issue of FCC rules compliance necessary to the licensing decision. We decided this exact issue in Folden.

---

[5] Though the issue was not properly raised by Biltmore, Folden holds that a takings claim is equally subject to the exclusive jurisdiction of the District of Columbia Circuit. 379 F.3d at 1352, 1360. In any event, a takings claim cannot rest on an alleged violation of the statute or regulation; instead, the analysis is predicated on an assumption of the validity of the government action. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006).

In Folden, the Court of Federal Claims plaintiffs sought to secure FCC cellular licenses through lotteries, asserting that they had an implied-in-fact contract with the FCC that obligated the FCC to hold lotteries for the licenses and that instead the FCC had proposed to auction the licenses. 379 F.3d at 1346, 1353. The plaintiffs then sued the FCC in the Court of Federal Claims for breach of an implied-in-fact contract, "takings in violation of the Fifth Amendment, and unconstitutional takings of their contract rights in violation of Article III of the U.S. Constitution." Id. at 1352. The Court of Federal Claims dismissed for lack of subject-matter jurisdiction under 47 U.S.C. § 402(b), and, in the alternative, dismissed for failure to state a claim upon which relief could be granted—due to lack of mutuality of intent to contract. Id. at 1352-54. On appeal, we held that it is "clear that the D.C. Circuit's jurisdiction over claims that fall within subsection 402(b) is exclusive," and that § 402 preempts the Court of Federal Claims's Tucker Act jurisdiction over the same subject matter. Id. at 1356-57. The Court of Federal Claims thus lacked jurisdiction to adjudicate whether the FCC was obligated to award the licenses by lottery because that issue was within the District of Columbia Circuit's exclusive jurisdiction over issues "ancillary" to FCC licensing decisions. Id. at 1360. This panel is bound by the holding in Folden.

At an earlier stage of this appeal, Biltmore argued that an initial en banc hearing was appropriate because Folden governed this case. Pl.-Appellant's Motion for Hearing En Banc, Biltmore II, No. 2008-5055, at 1 (Fed. Cir. Apr. 30, 2008) ("Because a panel of this Court ruled in [Folden] that the Court of Federal Claims has no jurisdiction over contract-based claims against the FCC in the radio licensing context, any other panel of this Court will presumably be bound by that determination, rendering an appeal to a

normal three-judge panel both futile and a waste of resources for all concerned."). However, Biltmore now argues that this court's holding in Folden was dictum. Biltmore notes that the Court of Federal Claims had originally decided the case underlying Folden on alternative grounds, holding that (1) there was no subject-matter jurisdiction because of the District of Columbia Circuit's exclusive jurisdiction, and (2) that no implied-in-fact contract existed. On appeal we addressed only the first ground, holding that subject-matter jurisdiction was lacking. Biltmore argues that the holding by this court in Folden—that the court lacked subject-matter jurisdiction—was somehow a hypothetical exercise because the non-existence of a contract was not overturned on appeal. This argument makes no sense. The panel in Folden did exactly what it was supposed to do. It addressed the jurisdictional holding before addressing the merits. Plains Commerce Bank v. Long Family Land & Cattle Co., 128 S. Ct. 2709, 2716 (2008). That jurisdictional holding was not dictum.

Biltmore also appears to suggest that this case is distinguishable from Folden because the plaintiff in Folden failed to exhaust the available administrative remedies (at the FCC with appeals to the District of Columbia Circuit), whereas here Biltmore fully exhausted all administrative remedies. Biltmore argues that the District of Columbia Circuit's decision is not binding on the Court of Federal Claims because the that decision gave deference to the agency's interpretation of the auction regulations under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), whereas the Court of Federal Claims would review the FCC's action under a de novo standard. Biltmore theorizes that the FCC's alleged self-interest bars deference to the FCC's interpretation. We are not persuaded by this argument. First, Biltmore

unsuccessfully made a similar argument, that the FCC should not be given deference due to its self-interest in the interpretation, to the District of Columbia Circuit and in its petition for certiorari. Biltmore II, 80 Fed. Cl. at 326. The District of Columbia Circuit rejected the self-interest argument. Biltmore is essentially asking us to re-adjudicate this question and to create inconsistent results for the same question in this court and the District of Columbia Circuit. Second, whether or not the precise issue was raised before the District of Columbia Circuit, jurisdiction conferred by § 402(b) is exclusive. There is no jurisdiction in the Court of Federal Claims to initially adjudicate or to re-adjudicate the FCC's compliance with its rules and regulations in licensing proceedings. The District of Columbia Circuit's jurisdiction over those issues is exclusive. We need not decide in this case whether, if the District of Columbia Circuit had found a rules violation, the Court of Federal Claims would have jurisdiction to consider an implied-in-fact contract claim founded in the District of Columbia Circuit's adjudicated rules violation. Biltmore does not and could not here base a claim on the District of Columbia Circuit's decision.

In short, the District of Columbia Circuit has exclusive jurisdiction to adjudicate alleged rules violations in FCC licensing proceedings. The Court of Federal Claims has no subject-matter jurisdiction to re-adjudicate that issue.

<u>AFFIRMED</u>

COSTS

No costs.