# United States Court of Appeals
# for the Federal Circuit

---

**SANDWICH ISLES COMMUNICATIONS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1446

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00149-LAS, Senior Judge Loren A. Smith.

---

Decided:  April 1, 2021

---

LEX RICHARD SMITH, Kobayashi Sugita & Goda, Honolulu, HI, argued for plaintiff-appellant.

SHARI A. ROSE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM.

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Sandwich Isles Communications, Inc. ("SIC") appeals the decision of the United States Court of Federal Claims ("Claims Court") granting the United States' motion to dismiss for lack of subject matter jurisdiction. *Sandwich Isles Commc'ns, Inc. v. United States*, 145 Fed. Cl. 566 (2019) ("*Decision on Appeal*"). Because we agree with the Claims Court that its Tucker Act jurisdiction over SIC's takings claim is displaced by the comprehensive scheme for review set forth in the Communications Act of 1934, 47 U.S.C. § 402(a), we affirm.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Congress enacted the Communications Act of 1934 ("Communications Act") and created the Federal Communications Commission ("FCC") to make "available . . . to all the people of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. In 1996, Congress amended the Communications Act to specify that it applies to all "rural, insular, and high cost areas." 47 U.S.C. § 254(b)(3). The amendment further required the FCC to provide "specific, predictable and sufficient Federal and State mechanisms to preserve and advance universal service." 47 U.S.C. § 254(b)(5).

To implement the Communications Act and fulfill its mandate to provide universal service, the FCC created the Universal Service Fund ("USF"), which is administered by the Universal Service Administrative Company ("USAC") and overseen by the FCC. *See* 47 C.F.R. § 54.701(a). The USF consists of four separate funds, but only the high-cost support fund, which is designed to support rural providers serving high-cost areas, is at issue in this appeal. *See Vermont Pub. Serv. Bd. v. FCC*, 661 F.3d 54, 57 (D.C. Cir. 2011) (describing the four funds).

High-cost universal service support is designed to ensure that consumers in "all regions of the Nation, including low-income consumers and those in rural, insular, and high-cost areas," have access to telecommunications services at rates that are reasonably comparable to those in urban areas. 47 U.S.C. § 254(b). The high-cost support programs fulfill these goals by allowing certain eligible carriers that serve rural, insular, and high-cost areas to recover certain reasonable costs of providing service. Eligible telecommunication carriers receiving high-cost universal service support must use it "only for the provision, maintenance, and upgrading of facilities and services for which the support is intended." 47 U.S.C. § 254(e).

Telecommunications carriers in high-cost areas may also receive support from the National Exchange Carrier Association ("NECA") pool, which is a separate fund from the high-cost Universal Service Fund. *Sandwich Isles Commc'ns, Inc., v. FCC*, 741 F. App'x 808, 809 (D.C. Cir. 2018). NECA is "a not-for-profit organization set up by the [FCC] that provides various services for small carriers, including filing of tariffs and operating a pooling process that averages the access charges billed to long-distance carriers." *Id.*

## B. Factual Background

SIC was formed in the mid-1990s to provide telecommunications services to native Hawaiians. SIC is a wholly-owned subsidiary of Waimana Enterprises, which is a Hawaiian corporation. Albert Hee was the president of SIC until sometime in 2013. Hee was also the sole owner of Waimana until December 2012, at which point he began to share ownership with trusts benefitting his three adult children.

In 1997, SIC was designated as an eligible telecommunications carrier to provide service to customers in the Hawaiian home lands, which consists of "roughly 200,000 acres [of land] spread out over more than 70 non-

contiguous parcels on six of the largest eight Hawaiian [I]slands." *Decision on Appeal,* 145 Fed. Cl. at 569. SIC subsequently began receiving high-cost support funds and participating in the NECA pool. *Id.*

### 1. The Paniolo Lease

After initially serving rural communities in Hawaii by leasing capacity on an existing undersea cable, SIC entered into an exclusive, 20-year lease of a newly constructed cable owned by Paniolo, LLC, a different corporate vehicle of Waimana. *Sandwich Isles Commc'ns*, 741 F. App'x at 809. "While [SIC's] subscriber base is relatively small, the Paniolo cable that it leased is massive, with the capacity to provide broadband service to the entire state of Hawaii. It was also expensive. The variable lease began at $15 million annually and had risen to $24 million annually by [2018]." *Id.*

SIC sought to include the cost of the lease in its revenue requirement, which would have allowed it to recover the cost of the lease from NECA's revenue pool. In 2010, the Commission's Wireline Competition Bureau issued a Declaratory Ruling allowing 50 percent of SIC's lease expenses to be included in its revenue requirement. *Id.* at 810. The Wireline Bureau found that "equitable considerations, primarily prospective future growth, justified the 50 percent figure." *Id.* SIC appealed that decision to the FCC.

In December 2016, the FCC "found that the equitable considerations relied upon by the Wireline Bureau's decision no longer justified recovery of 50 percent of the Paniolo cable costs—the projected growth never materialized." *Id.* The FCC permitted SIC to keep the sums it received in the past. But moving forward, the FCC determined that SIC could only recover $1.9 million per year from the NECA pool. *Id.* SIC filed an appeal challenging the FCC's order, which the United States Court of Appeals for the District of Columbia ("D.C. Circuit") denied. *Sandwich Isles Commc'ns*, 741 F. App'x at 809–11.

## 2. Changes to SIC's USF Support

In 2011, the FCC comprehensively reformed its existing regulatory system for telephone service. *In re FCC 11-161*, 753 F.3d 1015, 1035 (10th Cir. 2014). As a result, the FCC reformed the manner and amount of USF payouts made to rural carriers. In relevant part, the FCC instituted a $250 per-line, per-month cap on USF support, effective July 2014. *See* 47 C.F.R. § 54.302(a). This was a significant reduction from the $14,000 per line per year that SIC had been receiving. *United States v. Sandwich Isles Commc'ns, Inc.*, 398 F. Supp. 3d 757, 766 (D. Hawaii 2019).

The FCC, recognizing that its reforms could impact particular recipients differently, established a waiver mechanism under which a carrier could seek relief from some or all of the reforms if the carrier could demonstrate that the reduction in existing high-cost support would put consumers at risk of losing service. *Id.* SIC sought a waiver, but the Wireline Competition Bureau denied its request in May 2013. *Decision on Appeal*, 145 Fed. Cl. at 571. Specifically, the Wireline Competition Bureau found that SIC failed to show good cause for a waiver and explained that SIC sought "a waiver that would allow it to retain a number of significant and wasteful expenses, totaling many millions of dollars, including significant payments to a number of affiliated and closely-related companies." *In re Connect Am. Fund*, 28 FCC Rcd. 6553, 2013 WL 1962345, at *1 (Wireline Comp. Bur. May 10, 2013). SIC did not appeal that order.

In July 2015, Albert Hee—manager of SIC and its parent company, Waimana—was convicted of violating the tax code. *Decision on Appeal*, 145 Fed. Cl. at 571. Specifically, Hee was found guilty of improperly categorizing certain personal expenses as business expenses from 2002 through 2012, and for failing to report personal expense payments as income. *Id.* Between 2002 and 2012, Waimana paid

$4,063,294.39 of Hee's personal expenses, which he improperly designated as business expenses. *Id.*

Shortly after Hee's conviction, the FCC directed USAC "to suspend 'high-cost funding to [SIC] pending completion of further investigation and/or other ameliorative measures to ensure that any funding provided is used solely in a manner consistent with Commission rules and policies.'" *Id.* USAC subsequently suspended SIC's USF support and audited SIC's use of USF funds from 2002 to 2015. *Id.* The audit revealed that SIC received millions of dollars of USF funds that it should not have received.

In September 2015, while USAC's investigation was pending, the Hawaii Public Utilities Commission issued an order stating that it could not certify that all federal high-cost support provided to SIC was used in the preceding calendar year (2014), and would be used in the coming calendar year (2016), only for the facilities and services for which the support was intended, as required by 47 C.F.R. §54.314(a). SIC has not received funds from the USF since September 2015, because an eligibility certification is a prerequisite to receiving USF funds. *Decision on Appeal*, 145 Fed. Cl. at 572.

In 2015, SIC filed a petition with the FCC alleging that the FCC lacked authority to suspend its high-cost subsidies and requesting release of the funds. SIC's petition to rescind the suspension remains pending. *Id.* at 574. In 2017, SIC petitioned the D.C. Circuit for a writ of mandamus, asking the court to order the FCC to reinstate the USF support. The court denied the petition in February 2018. *Sandwich Isles Commc'ns, Inc.*, No. 17-1248, 2018 U.S. App. LEXIS 4139 (D.C. Cir. Feb. 16, 2018).

Following the USAC investigation, the FCC issued an order in December 2016, finding that SIC improperly received payments in the amount of $27,270,390 from the federal high-cost support mechanisms that were in place between 2002 and 2015. *Decision on Appeal*, 145 Fed. Cl.

at 572. Specifically, the FCC found that the amounts paid to SIC were excessive. *In re Sandwich Isles Commc'ns*, 31 FCC Rcd. 12999, 13000, 2016 WL 7129743, at *1 (F.C.C. Dec. 5, 2016). The 2016 order required SIC to repay the over $27 million that it improperly received and continued the suspension of further USF payments to SIC.

SIC filed a petition for reconsideration of the 2016 order, which the FCC denied in January 2019. *Sandwich Isles Commc'ns, Inc.*, 34 FCC Rcd. 577, 579, 2019 WL 105385, at *2 (F.C.C. Jan. 3, 2019). The D.C. Circuit subsequently dismissed SIC's appeal of the reconsideration order on grounds that SIC missed its filing deadline by one day. *Sandwich Isles Commc'ns, Inc. v. FCC*, No. 19-1056, 2019 WL 2564087, at *1 (D.C. Cir. May 17, 2019).

## C. Procedural History

In January 2019, SIC filed this suit in the Claims Court, alleging that the cumulative effect of the FCC's reductions in SIC's federal subsidies resulted in a taking of property without just compensation.[1] SIC sought $200 million in damages.

The government moved to dismiss, arguing, among other things, that the court's Tucker Act jurisdiction is preempted by the comprehensive remedial scheme provided in the Communications Act. Specifically, the government argued that SIC's claims seek review of FCC decisions, which are within the exclusive jurisdiction of the courts of appeals. 28 U.S.C. § 2342; 47 U.S.C. § 402(a). The government further argued that SIC failed to allege a

---

[1]    SIC's complaint also included claims relating to an alleged breach of an implied-in-fact contract and alleged violations of Federal statutes and regulations mandating compensation. SIC has not pursued those claims on appeal, however.

valid takings claim because it has no property interest in receiving support payments from FCC-administered funds.

On October 11, 2019, the Claims Court dismissed SIC's complaint for lack of subject matter jurisdiction. At the outset, the court recognized that the "Communications Act of 1934 and the Hobbs Act specify the process for judicial review of FCC orders." *Decision on Appeal*, 145 Fed. Cl. at 573. The court concluded that, although SIC characterized its claim as a Fifth Amendment taking, "the true nature of SIC's claims is targeted at invalidating the FCC orders." *Id.* at 575. The court explained that, by statute, only the D.C. Circuit—not the Claims Court—has jurisdiction over SIC's claims. *Id.* at 574. The Claims Court therefore dismissed SIC's claims pursuant to Rule 12(b)(1).

SIC moved for reconsideration, arguing that no takings claim was ripe at the time of the FCC proceedings, making the Claims Court the appropriate venue for its claims. The Claims Court denied that motion in January 2020, explaining that its jurisdiction under the Tucker Act had been preempted by the Communications Act and the Hobbs Act. Order at 1–2, *Sandwich Isles Commc'ns, Inc. v. United States*, No. 19-149 (Ct. Cl. Jan. 31, 2020), ECF. No. 15. The court further stated that, "[t]o the extent that a takings claim can arise out of the FCC orders at issue here, the Court agrees with the plaintiff's assertion that the Court cannot rule on a takings claim that is not yet ripe." *Id.* at 2. But because SIC has not "received a decision regarding its 2015 petition challenging the suspension of its high-cost subsidies, any takings claim, to the extent that one even exists, remain unripe." *Id.* The court therefore denied SIC's motion for reconsideration.

SIC timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

We review "whether the Court of Federal Claims possesses subject-matter jurisdiction de novo." *Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009).

On appeal, SIC argues that it "has a takings claim for Constitutionally confiscatory rates where, as here, it has been denied a waiver and the rates cannot sustain continued service." Appellant's Br. 9. According to SIC, it "filed its takings claim at the right time and in the right court" because it made a waiver request to the FCC, and that request was denied. *Id.* at 11.

The government responds that the Claims Court correctly dismissed SIC's complaint for lack of subject matter jurisdiction because Congress enacted a comprehensive regime governing judicial review of FCC orders that displaces Tucker Act jurisdiction. For the reasons explained below, we agree.[2]

Under the Tucker Act, the Claims Court has jurisdiction over cases "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the

---

[2]    The government also argues that SIC cannot allege a valid takings claim because it has no vested property interest in receiving support from the high-cost universal support fund. The government may well be right. *See Members of the Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323, 1335 (Fed. Cir. 2005) ("[T]he fact that [the plaintiffs] expected to continue to derive benefits from the program does not create rights to compensation from the government."). But, because we agree with the Claims Court that the Communications Act preempts its Tucker Act jurisdiction over SIC's takings claim, we need not address the that alternative argument.

United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Supreme Court has described the Tucker Act as serving a "gap-filling role" by allowing "for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable." *United States v. Bormes*, 568 U.S. 6, 12–13 (2012). Accordingly, the Supreme Court and this court have held that the Tucker Act does not apply in various circumstances where Congress has provided "a precisely drawn, detailed statute" that "contains its own judicial remedies." *Id.* at 12 (internal quotation marks omitted); *Folden v. United States*, 379 F.3d 1344, 1357 (Fed. Cir. 2004). "To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'" *Horne v. Dep't of Agric.*, 569 U.S. 513, 527 (2013) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)).

"In the Communications Act, Congress enacted a comprehensive statutory and regulatory regime governing orders of the Commission." *Folden*, 379 F.3d at 1357. The Communications Act specifically provides for judicial review of FCC decisions in 47 U.S.C. § 402. Subsection 402(a) provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by [the Hobbs Act]." 47 U.S.C. § 402(a). The Hobbs Act, in turn, provides for the courts of appeals to have "exclusive jurisdiction" to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" all final orders of the Commission made reviewable by subsection 402(a). 28 U.S.C. § 2342. Subsection 402(b), on the other hand, indicates that the D.C. Circuit has jurisdiction with respect to certain decisions and orders of the Commission, as set forth in subsections 402(b)(1)–(10). 47 U.S.C. § 402(b).

The Supreme Court has held that the statutory jurisdiction of the courts of appeals over claims that fall within the scope of subsection 402(a) is exclusive. *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals." (citing 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)). Likewise, we have recognized that "the D.C. Circuit's jurisdiction over claims that fall within subsection 402(b) is exclusive." *Folden*, 379 F.3d at 1356.

In *Folden*, we examined the Communications Act in detail and explained that "subsections 402(a) and (b) comprise the entire statutory regime by which parties may obtain judicial review of Commission decisions." *Id.* We further explained that, "[b]y their plain language, subsections 402(a) and (b) are mutually exclusive." *Id.* As such, "[a]ppeals from all decisions of the Commission that do not fall within subsection 402(b) are encompassed by the procedures of subsection 402(a)." *Id.* And we reiterated that where, as here, a "specific and comprehensive scheme for administrative and judicial review is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." *Id.* at 1357 (quoting *Vereda, Ltda v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001)).

Because the "true nature" of the plaintiffs' claims in *Folden* involved denial of a license application, we found that they fell within the scope of subsection 402(b)(1). 379 F.3d at 1359 n. 13. As such, they were subject to the exclusive jurisdiction of the D.C. Circuit. *Id.* at 1363. We therefore affirmed the Claims Court's dismissal for lack of subject matter jurisdiction. *Id.*; *see also Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1384 (Fed. Cir. 2009) ("There is no jurisdiction in the Court of Federal Claims to initially adjudicate or to re-adjudicate the FCC's compliance with its rules and regulations in

licensing proceedings.  The District of Columbia Circuit's jurisdiction over those issues is exclusive.").

Although *Folden* expressly addressed claims under subsection 402(b), our reasoning applies with equal force to claims under subsection 402(a)—the jurisdictional provision at issue here—because such claims are part of the same comprehensive statutory scheme governing orders of the FCC.  Indeed, it is well-established that courts of appeals have exclusive statutory jurisdiction to review claims that fall within subsection 402(a).  *Folden*, 379 F.3d at 1356 (citing *FCC*, 466 U.S. at 468); *see also AT&T Corp. v. FCC*, 323 F.3d 1081, 1084 (D.C. Cir. 2003) ("Section 402(a), the Act's general review provision, vests in courts of appeals exclusive jurisdiction over '[a]ny proceeding to enjoin, set aside, annul or suspend' or determine the validity of final Commission orders, 47 U.S.C. § 402(a)[.]"); *U.S. West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1120 (9th Cir. 1999) ("The Hobbs Act grants exclusive jurisdiction to courts of appeals to determine the validity of all final orders of the FCC." (citing 28 U.S.C. § 2342; 47 U.S.C. § 402(a)).  Accordingly, the Communication Act's comprehensive scheme for review displaces Tucker Act jurisdiction for FCC orders and decisions falling within 47 U.S.C. § 402(a).

The Supreme Court has made clear that "a claim for just compensation under the Takings Clause must be filed in the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *Horne*, 569 U.S. at 527 (quoting *Eastern Enters. v. Apfel*, 524 U.S. 498, 520 (1998) (plurality opinion)); *see also Vereda Ltda v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (holding Tucker Act jurisdiction over plaintiff's takings claim preempted by statutory scheme that provided for review with the agency and in district court).  Accordingly, the relevant inquiry is whether the Communications Act withdraws Tucker Act jurisdiction over takings claims.

We recently determined that the Communication Act's comprehensive remedial scheme preempts and therefore displaces Tucker Act jurisdiction over takings claims. *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1096 (Fed. Cir. 2018). In *Alpine*, the plaintiff alleged that the FCC's cancellation of two personal communications services licenses was a taking for which it was entitled just compensation. *Id.* at 1088. We explained that the judicial review scheme set forth in the Communications Act "squarely covers Alpine's grievance" because its "takings claim (like its contract claims) is based on the FCC's cancellation of the station licenses, a decision that falls squarely within the judicial-review provision, 47 U.S.C. § 402(b)(5)." *Id.* at 1097–98.

First, we examined the Communications Act and found that it provides a "comprehensive statutory scheme through which Alpine could present, and is directed to present, its takings claim, to the exclusion of the Tucker Act under the *Horne* analysis." *Id.* at 1079. We noted that, "[a]s for relief at the agency level, there was no procedural impediment to Alpine's presenting a takings claim to the FCC. The FCC did not suggest that it lacked the authority to review the license cancellation and take steps to provide compensation." *Id.* at 1097. Indeed, both parties agreed that "the FCC had the power to grant Alpine adequate relief, by eliminating the taking, providing compensation, or some combination." *Id.* at 1096. We then explained that the D.C. Circuit was capable of ordering any appropriate relief with respect to the takings claim, whether on appeal or on remand to the agency. *Id.* at 1098. Accordingly, under "the comprehensive statutory scheme" provided by the Communications Act, "Alpine could have raised a constitutional takings claim; the FCC had the authority to grant relief; and the D.C. Circuit had jurisdiction to review whether a taking occurred and, if so, whether the FCC decision 'yield[ed] just compensation.'" *Id.* (citation omitted). Because the statutory scheme provided the plaintiff a

14    SANDWICH ISLES COMMUNICATIONS v. UNITED STATES

"ready avenue" to bring its takings claim and displaced Tucker Act jurisdiction over that claim, we affirmed the Claims Court's judgment dismissing the plaintiff's claims for lack of jurisdiction. *Id.*

Although *Alpine* dealt specifically with subsection 402(b), as we explained before, our analysis and reasoning with respect to the statutory scheme set forth in the Communications Act applies with equal force in cases involving subsection 402(a). The relevant question is therefore whether SIC's alleged takings claims challenge FCC actions and orders and thus are governed by subsection 402(a).[3] That subsection, as noted, provides the procedure "to enjoin, set aside, annul, or suspend any order of the [FCC]" except those appealable under subsection 402(b). 47 U.S.C. § 402(a).

In analyzing whether subsection 402(a) applies, we "must look to the true nature of [the plaintiff's] claim, not how plaintiff characterize[s] it." *Folden*, 379 F.3d at 1359 n.13. Here, SIC's takings claim is based on its disagreement with FCC decisions regarding the amount of

---

[3]    Although the Claims Court stated that SIC's claims fall within the scope of subsection 402(b), it did not identify a particular provision within that subsection. *Decision on Appeal*, 145 Fed. Cl. at 574 ("It seems clear to this Court that the 'true nature' of SIC's claims is focused on challenging the validity and propriety of FCC orders and actions, therefore bringing those claims under the purview of 47 U.S.C. § 402(b)."). Notably, the government does not contend that subsection 402(b) applies to SIC claims. Because SIC's claims do not appear to fall within the scope of a particular provision in subsection 402(b), we focus our inquiry on subsection 402(a). *See Folden*, 379 F.3d at 1356 ("Appeals from all decisions of the Commission that do not fall within subsection 402(b) are encompassed by the procedures of subsection 402(a).").

subsidies SIC could receive from the USF and NECA pools. SIC also takes issue with the FCC's 2013 order, which denied SIC's petition for waiver of the $250 per-line, per-month cap on high-cost universal service support. These allegations take aim at FCC orders and seek to "enjoin, set aside, annul, or suspend" them. *See* 47 U.S.C. § 402(a). Because SIC's takings claim challenges FCC actions and orders governed by 47 U.S.C. § 402(a), the statutory scheme set forth in the Communications Act displaces the Claims Court's Tucker Act jurisdiction.

On appeal, SIC argues that it "did not plead its claims as challenges to FCC orders because the claims are not, in fact, facial challenges to FCC orders." Appellant's Br. 15. SIC maintains that the FCC's denial of its "waiver petition in 2013 established the rate in the FCC's 2011 Order as final," and that the "rate is confiscatory, resulting in an unconstitutional taking under the Fifth Amendment." *Id.* at 15–16. But SIC's claim, regardless of how it is characterized, is premised on its disagreement with the amount of subsidy funding it has received from FCC-administered funds, particularly the high-cost USF. Congress has given the courts of appeals exclusive jurisdiction over "[a]ny proceeding to enjoin, set aside, annul, or suspend" orders of the FCC—which includes FCC decisions relating to universal service support. 28 U.S.C. § 2342(a); 47 U.S.C. § 402(a). Accordingly, if SIC wanted to challenge the FCC orders, it was required to do so within the comprehensive statutory scheme established by the Communications Act—that is, by first filing an appeal with the FCC before pursuing a judicial remedy pursuant to section 402.

SIC also maintains that it could not have raised its takings claim as a challenge to any FCC order because "a takings claim asserted in an appeal from the FCC's order would be unripe." Appellant's Br. 12–13. At the same time, however, SIC alleges that "a confiscatory rate takings claim is ripe when its impacts are known" and the "impacts of the FCC's 2011 rates have been fully manifested." *Id.*

at 14.  Indeed, SIC alleges that its taking claim "was already ripe when SIC filed its 2015 petition." *Id.* SIC's ripeness allegations, which seem to be a moving target, miss the mark.  The fact remains that SIC has not raised its takings claim before the FCC, which it was required to do before seeking judicial review.  *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–95 (1985) ("[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019).

As we said in *Alpine*, there is no procedural impediment to presenting a takings claim to the FCC.  878 F.3d at 1097.[4]  The proper procedure for doing so is set forth in the Communication Act's comprehensive statutory scheme: SIC could have raised a constitutional takings claim to the FCC, challenging the rate; the FCC had authority to grant relief, including waiver of the rate it set; and if the FCC denied the waiver, SIC could appeal that decision to the full commission and then to the court of appeals.  Counsel for the government confirmed this procedure during oral argument.  *See* Oral Arg. at 15:50–17:10, *available at*

---

[4]    As we explained in *Alpine*, we do not imply that all constitutional challenges to the FCC's actions must be presented to the FCC before they can be asserted.  But, where, as here, the FCC is in the position to prevent an alleged taking in the course of its own proceedings, the agency must be made aware of any such claim.  Any such claim is then subsumed into the agency's final decision and can be appealed only to the court of appeals.  *See Alpine*, 878 F.3d at 1096–98.

http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1446_01072021.mp3.

SIC fails to identify any authority suggesting that the Claims Court has jurisdiction under the Tucker Act to consider takings claims based on FCC decisions regarding universal service support, and we have found none.[5] That is not surprising, given that Congress has granted the courts of appeals exclusive jurisdiction over challenges to FCC orders under 47 U.S.C. § 402(a). SIC cannot, on alleged ripeness grounds, bypass the comprehensive statutory scheme for judicial review established by Congress in the Communications Act. Accordingly, the Claims Court correctly determined that it lacked subject matter jurisdiction over SIC's takings claim.

## III. CONCLUSION

We have considered SIC's remaining arguments and find them unpersuasive. For the reasons stated herein, we

---

[5]    SIC cites the Tenth Circuit's decision in *In re FCC 11-161*, 753 F.3d 1015, 1136 (10th Cir. 2014) for the proposition that "a takings claim brought as an appeal from the subject [FCC] order would be subject to dismissal for lack of ripeness." Appellant's Br. 13. There, the court explained that, "[w]hen a carrier faces an insufficient return, it can seek greater support under the Total Cost and Earnings Review Process. Until this process is invoked, the as-applied challenge is premature." *In re FCC*, 753 F.3d at 1136. The Tenth Circuit further stated that, "[i]f the FCC imposes confiscatory rates, carriers could then bring as-applied challenges." *Id.* (citing *Verizon Commc'n, Inc. v. FCC*, 535 U.S. 467, 526–27, 528 n. 39 (2002)). But nothing in *Verizon* or *In re FCC* alters the fact that the Communications Act provides the statutory scheme for judicial review of FCC orders and withdraws Tucker Act jurisdiction over SIC's takings claims.

affirm the Claims Court's dismissal of SIC's takings claim for lack of subject matter jurisdiction.

**AFFIRMED**